UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LOUIS MAGNOTTI,

                                        Plaintiff,

                                                                **MEMORANDUM & ORDER**

            - against -
                                                                14-CV-6679 (ILG) (RML)
CROSSROADS HEALTHCARE
MANAGEMENT, LLC, <u>et al.</u>,

                                        Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Louis Magnotti brings this action against defendants Crossroads

Healthcare Management, LLC ("Crossroads"), ProScript Pharmacy Management, LLC

("ProScript"), Michael DeBartolome, Patrick Paolucci, Barry Marzigliano, and several

unknown companies and individuals.  At the heart of plaintiff's claims are two

allegations of unlawful behavior: first, defendants refused to permit him to return to

work on a full-time basis after he underwent spinal surgery, and second, after he

resigned in protest of this decision, defendants denied him money to which he was

entitled under a profit-sharing agreement between the parties.  These denials, plaintiff

claims, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, <u>et seq.</u>;

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, <u>et seq.</u>; the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, <u>et seq.</u>,

the whistleblower provision of the New York Labor Law ("NYLL"), N.Y. Lab. Law §

740(2)(c); and common law.  Defendants now move to dismiss plaintiff's Amended

Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, the motion is GRANTED in part and DENIED in

part.  Plaintiff is given leave to file a Second Amended Complaint that abides by the rulings set forth herein.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from plaintiff's Amended Complaint (Dkt. No. 10) and its attachments, and are accepted as true for the purposes of deciding this motion.  ProScript is a "closed-door" pharmacy for union members. Crossroads is a healthcare management company that services health plans for union members and their families.  Crossroads is the managing partner of ProScript, and the two companies operate out of the same office in Staten Island.  At all relevant times, DeBartolome was the president and managing member of ProScript as well as the president and managing member of Crossroads; Paolucci was an officer and managing member of ProScript as well as an officer of Crossroads; and Marzigliano was the chief financial officer of Crossroads as well as an officer and member of ProScript.

Plaintiff is a licensed New York State pharmacist.  In November of 2004, he began working part-time as ProScript's supervising pharmacist.  In 2005, he assumed a full-time schedule to accommodate ProScript's growth.  He was paid as a salaried employee.  In the summer of 2006, DeBartolome, with the knowledge and consent of the other defendants, invited plaintiff to join in an agreement to share in ProScript's profits.  Under this agreement, DeBartolome said, plaintiff would receive distributions of 15% of ProScript's profits for the rest of his life, even if he no longer worked for the pharmacy.

Plaintiff, Marzigliano and DeBartolome (in his capacity as president of Crossroads) signed ProScript's "Operating Agreement" on December 15, 2006.  That agreement provided for two types of membership: "Class I" members, who were entitled

to 100 votes on company affairs as a class, and "Class II" members, who were entitled to zero votes. Plaintiff and Marzigliano became Class II members of ProScript. The sole Class I member, and thus the de facto holder of all voting power, was Crossroads. The agreement entitled plaintiff to distributions of 15% of ProScript's net profits "[b]efore a member's withdrawal and before the winding up of the Company," subject to the caveat that "[t]he Company may not make any distribution that will impair [its] ability . . . to pay its debts and obligations as they mature." Am. Compl., Ex. 2, Art. 3.12. From December of 2006 until December of 2013, plaintiff received distributions from ProScript in accordance with the agreement.

In April of 2013, plaintiff's ability to walk began to deteriorate, a fact noticed by DeBartolome, Paolucci, and Marzigliano. Plaintiff was initially diagnosed with a lower back problem, referred to an orthopedic surgeon and treated with physical therapy two to three times a week. Defendants were aware of plaintiff's diagnosis and ongoing treatment. In August of 2013, with his condition worsening, plaintiff went to see a chiropractor who ordered a magnetic resonance imaging ("MRI") exam that plaintiff underwent in September of 2013. That MRI revealed compression on plaintiff's spinal cord and bone spurs around his spinal column near his neck. Plaintiff returned to his orthopedic surgeon, who recommended he undergo surgery to remove the bone spurs, fuse several of his cervical and thoracic vertebrae together, and insert rods into his spine to prevent paralysis. After seeking a second opinion which confirmed this course of treatment, plaintiff requested six to eight weeks of medical leave which defendants approved on the basis of necessity. Defendants hired Hank Buncek, another pharmacist, to fill in for plaintiff temporarily.

Plaintiff began his medical leave on September 19, 2013 and underwent surgery to remove the bone spurs and fuse his vertebrae on September 26, 2013. He remained in inpatient rehabilitation until November 1, 2013, and, upon his discharge, continued with a course of in-home therapy until December 10, 2013. Throughout this period of time, plaintiff communicated repeatedly with pharmacy technicians at ProScript to address questions Buncek left unanswered. He also spoke with DeBartolome and Paolucci to update them on his recovery. On December 30, 2013, plaintiff's orthopedic surgeon cleared him to return to work without limitations. Though plaintiff still experiences back problems, has difficulty walking or standing, and requires the assistance of a cane, he is capable of performing his prior job as it does not require him to stand or walk for prolonged periods of time.

In early January of 2014, plaintiff informed DeBartolome that he was ready to return to work full-time. DeBartolome refused to permit plaintiff to return full-time but instead allowed him to work only two or three days a week, with Buncek working when plaintiff did not. Later that month, plaintiff again requested to return to work full-time, and was informed by DeBartolome that he could resume a full schedule in March of 2014. After defendants terminated two pharmacy technicians for their poor performance (which plaintiff attributes to Buncek's supervisory negligence), plaintiff again requested to resume working full-time on February 3, 2014. DeBartolome responded by saying "Hold off on that. We have to talk."

The next day, February 4, 2014, DeBartolome, Paolucci and Marzigliano called plaintiff at home. DeBartolome informed plaintiff that he would be working a three-day week for the foreseeable future. Plaintiff objected, noting that this schedule would violate a New York regulation requiring supervising pharmacists to work full-time.

DeBartolome, Paolucci and Marzigliano responded that the decision was final.  Plaintiff wrote a letter to DeBartolome and Paolucci that same day, stating that, as a result of the "insulting and degrading conference call," he was resigning his position as supervising pharmacist, effective February 18, 2014.  He specifically noted, however, that he would "remain a member of the [ProScript] LLC and assist in that capacity as necessary."  Am. Compl., Ex. 3.

On February 7, 2014, plaintiff emailed DeBartolome and Paolucci, again informing them that they were violating New York's pharmacy law by operating without a full-time supervising pharmacist.  Paolucci's response was that Buncek would commence working full-time on February 10, 2014.  Plaintiff replied, asking "what [he] had done during his recovery that ha[d] changed [his] status" with defendants.  Id., Ex. 4.  Neither DeBartolome nor Paolucci responded.

By letter dated February 7, 2014, the same day as the email correspondence, DeBartolome, in his capacity as president of Crossroads, confirmed receipt of plaintiff's letter of resignation and stated that February 18, 2014 "shall mark the end of our business relationship together."  Id., Ex. 5.  In a separate letter that same day, DeBartolome, in his capacity as ProScript's president and managing member, announced to the membership of ProScript (including plaintiff) that he was deferring distributions of any excess cash flow from the company in order to "establish reserves for payment of the Company's expenses, debt payments, capital improvements and the like."  Id., Ex. 6.  Plaintiff wrote to DeBartolome requesting ProScript's records and profit/loss statements for 2013 and 2014, but received no response.  Plaintiff has not received distributions of ProScript's profits since December of 2013.

On August 26, 2014, plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against on grounds of disability and in retaliation for his complaints. Magnotti Aff., Dkt. No. 14-1, Ex. A at 2.[1] On the EEOC claim form, plaintiff marked a box indicating that he "ha[d] a disability," but left blank another box indicating "[n]o disability but the organization treats me as if I am disabled." Id. at 3. On November 6, 2014, the EEOC issued a right-to-sue letter to plaintiff.

Plaintiff commenced this action on November 13, 2014. Dkt. No. 1. On February 27, 2015, defendants moved to dismiss the original complaint. Dkt. No. 8. In response, plaintiff filed an Amended Complaint on March 24, 2015, and defendants withdrew their motion on April 9, 2015. Dkt. Nos. 10-11. Defendants filed a new motion to dismiss on May 4, 2015, plaintiff opposed it on June 5, 2015, defendant replied on June 19, 2015, and plaintiff submitted a proposed sur-reply letter for the Court's approval on June 29, 2015, which defendants moved to strike on July 1, 2015.[2] Dkt. Nos. 13-17.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although detailed factual

---

[1] Defendants urge the Court to disregard plaintiff's affidavit submitted in opposition to their motion to dismiss. In ruling on a motion to dismiss for failure to state a claim, a district court may consider only the factual allegations contained in the pleadings, documents attached to the pleadings or incorporated by reference, documents a plaintiff knew of and relied on in drafting the complaint, and matters of public record of which judicial notice may be taken. E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Wong v. CKX, Inc., 890 F. Supp. 2d 411, 415 (S.D.N.Y. 2012). Thus, while the factual allegations contained in plaintiff's affidavit are not properly before the Court, the EEOC questionnaire attached to that affidavit, which plaintiff relied upon in drafting the Amended Complaint, may be considered here.

[2] As the outcome of defendants' motion was unaffected by plaintiff's sur-reply, the motion to strike is DENIED as moot.

allegations are not necessary, mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. (internal quotation marks and citations omitted). The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011).

## DISCUSSION

### I. ADA Claims

Congress passed the ADA in order to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To that end, the Act prohibits, inter alia, employment discrimination against individuals with actual or perceived disabilities (including refusal to provide reasonable accommodations to disabled employees who request them) and retaliation against employees who invoke their rights under the Act. See Vale v. Great Neck Water Pollution Control Dist., --- F. Supp. 3d ---, 2015 WL 248603, at *4-10 (E.D.N.Y. Jan. 20, 2015). Despite plaintiff's numerous allegations of direct discrimination, Counts I and II of the Amended Complaint, the sole Counts to invoke the ADA, state only that "Defendants have violated the ADA[] by failing to accommodate Plaintiff and/or retaliating against Plaintiff for engaging in protected activity." Am. Compl. ¶ 133, see also id. ¶ 137.

Defendants argue these claims must be dismissed because (1) plaintiff failed to exhaust his administrative remedies prior to filing this suit, (2) plaintiff was not an employee but rather a co-owner of ProScript, (3) defendants cannot be considered employers as the ADA defines the term, and (4) plaintiff suffered from no actual or

perceived disability. While defendants' arguments are largely meritless, Count I's

failure-to-accommodate claim is in no way supported by the factual allegations in the

Amended Complaint, which warrants that Count's dismissal.

## A. Exhaustion of Administrative Remedies

Ordinarily, an individual seeking to bring an employment discrimination or

retaliation suit under the ADA must first file a claim of employment discrimination with

the EEOC within 180 days after the discriminatory acts. See McInerney v. Rensselaer

Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) (per curiam). Defendants

erroneously contend that failure to exhaust administrative remedies is a jurisdictional

bar. In the employment discrimination context, exhaustion is not jurisdictional. See

Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006) (quoting Boos v. Runyon, 201 F.3d

178, 182 (2d Cir. 2000)). Thus, plaintiff is "not required to demonstrate at the pleading

stage that his claims were administratively exhausted." DiPetto v. U.S. Postal Serv., 383

F. App'x 102, 104 (2d Cir. 2010) (summary order) (citing Jones v. Bock, 549 U.S. 199,

216 (2007)).[3]

Defendants also claim that plaintiff's failure to check a box on his claim

indicating that he had no disability "but the organization treats me as if I am disabled"

should preclude him from raising any claim as to discrimination on the grounds of a

perceived, rather than actual, disability. This argument is frivolous. Plaintiff correctly

believes that he is within the definition of an individual with a disability under the ADA,

for reasons discussed infra, which would make checking a box indicating he had no

---

[3] As plaintiff is being granted leave to amend, however, he may well wish to attach his full EEOC claim to his Second Amended Complaint in the interest of completeness. If he does not attach the full claim to his new pleading, and defendants believe it lends credence to their arguments, they may submit it in support of a renewed motion to dismiss without risking the Court converting it into one for summary judgment. See McKnight v. Dormitory Auth. of State of N.Y., 995 F. Supp. 70, 74-75 (N.D.N.Y. 1998).

disability not only unnecessary but incorrect.  In any event, allegations that certain behavior constituted discrimination on the basis of a perceived disability are reasonably related to allegations that the same behavior constituted discrimination on the basis of an actual disability, thereby permitting plaintiff to proceed on either theory.  See, e.g., Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006); Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003).

## B.  Plaintiff's Status as an Employee

Defendants argue that the ProScript profit-sharing agreement effectively makes plaintiff a partial owner of the company, not an employee.  While plaintiff is a Class II member of ProScript, "[t]he mere fact that a person has a particular title . . . should not necessarily be used to determine whether he or she is an employee or a proprietor." Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 450 (2003).  Rather, the Court must consider whether plaintiff "act[ed] independently and participate[d] in managing the organization, or whether [he] was subject to the organization's control."[4] Id. at 449 (internal citation omitted).  This fact-intensive inquiry typically focuses on six non-exhaustive factors: (1) whether the organization can hire and fire the individual or set the rules and regulations of his work, (2) whether (and the extent to which) the organization supervises the individual's work, (3) whether the individual reports to someone higher in the organization, (4) whether (and the extent to which) the individual is able to influence the organization, (5) whether the parties intended in

---

[4] Clackamas and its progeny focus on shareholders in professional corporations (P.C.s) rather than members of limited liability companies (LLCs), but there is no reason to believe their broad guidance regarding how to draw distinctions between proprietors and employees who may have some stake in a company would vary based on the corporate form.  See, e.g., Foresta v. Centerlight Capital Mgmt., LLC, 379 F. App'x 44, 46 (2d Cir. 2010) (summary order) (applying Clackamas factors to an LLC member); Pate v. Ponchartrain Partners, LLC, Civil Action No. 13-6366, 2014 WL 2560416, at *6 (E.D. La. June 6, 2014) (same, collecting cases).

written agreements or contracts for the individual to be an employee, and (6) whether the individual shares in the profits, losses, and liabilities of the organization. See, e.g., id. at 450 (quoting 2 EEOC Compliance Manual § 605:0009 (2000)); Echevarria v. Insight Med., P.C., 72 F. Supp. 3d 442, 457 n.10 (S.D.N.Y. 2014).

Applying those six factors to the allegations in the Amended Complaint, it is readily apparent that plaintiff has pleaded his status as an employee. Defendants, according to plaintiff, controlled all aspects of his work schedule and wages, required him to report to DeBartolome and Paolucci, and denied him any sort of influence over ProScript by vesting all voting power in Crossroads. These facts, if true, would warrant finding plaintiff to be an employee rather than a proprietor, and defendants' motion to dismiss on grounds that plaintiff was a part owner of ProScript is accordingly denied.

### C.  Defendants' Status as Employers

Defendants' argument that ProScript and Crossroads cannot function as plaintiff's joint employers is effectively a restatement of their meritless argument regarding his employment status: because he was a part owner of ProScript, they claim, neither that LLC nor Crossroads could have been his employers. For the reasons set forth supra, that argument fails. While defendants also make perfunctory arguments that plaintiff worked solely for ProScript, the Amended Complaint clearly alleges that ProScript and Crossroads, companies with the same officers that operated out of the same Staten Island address, functioned as "separate legal entities" that "have chosen to handle certain aspects of their employer-employee relationships jointly," thereby pleading joint employment. See Echevarria, 72 F. Supp. 3d at 459 (quoting Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009)).

Defendants also argue that DeBartolome, Paolucci, and Marzigliano cannot be sued in their individual capacities under the ADA. They are correct that the employment discrimination and retaliation provisions of the ADA do not ordinarily provide for individual liability. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010); Lane v. Maryhaven Ctr. of Hope, 944 F. Supp. 158, 160-62 (E.D.N.Y. 1996). Plaintiff concedes that Marzigliano cannot be found individually liable, which warrants dismissal of the ADA claims against him with prejudice, but argues that DeBartolome and Paolucci exercised such control over Crossroads and ProScript that the companies were little more than their alter egos. To state a claim for individual liability under the alter ego doctrine, a plaintiff must plead "(1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own; and (2) that the domination and control was used to commit a fraud or wrong against the plaintiff which proximately caused [his] injuries." Lane, 944 F. Supp. at 163 (internal citations omitted).

Plaintiff has adequately pleaded an alter ego claim against DeBartolome, but not Paolucci. The Amended Complaint identifies both men as senior officers of Crossroads and ProScript, but notes that DeBartolome was the president of both companies and the one who unilaterally prohibited plaintiff from returning to work full-time after his surgery, with Paolucci merely "complicit" in the decision. See Am. Compl. ¶¶ 9-12, 104-05. Paolucci's role is described as vaguely supervisory, and the only direct action he is accused of taking is sending an email to plaintiff informing him that Buncek would begin working full-time in plaintiff's stead. See id. ¶ 118. These allegations do not indicate dominion and control over ProScript and Crossroads, and the ADA claims against Paolucci are therefore dismissed with prejudice.

### D. Plaintiff's Actual or Perceived Disability

The ADA's definition of a "disability" encompasses both "a physical or mental impairment that substantially limits one or more major life activities" and "being regarded as having such an impairment." See 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, walking and standing. See id. § 12102(2)(A). According to the EEOC's implementing regulations for the ADA, determining whether a limitation is substantial requires a comparison to "most people in the general population," though the standard is not meant to be demanding, and "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." See 29 C.F.R. § 1630.2(j)(1)(ii).

Here, plaintiff has alleged that, even after his surgery, he "experienced back problems" and "had difficulty walking or standing for prolonged periods of time." Am. Compl. ¶ 82. He continued to suffer from this disability as of the date of his Amended Complaint, over a year after surgery, and "still requires the assistance of a cane to walk." Id. ¶ 83. Defendants, citing to out-of-circuit decisions or cases resolved via summary judgment motions, argue that such limitations cannot constitute a disability as the ADA defines the term, particularly because plaintiff's doctor cleared him to return to work "without limitation." Defendants are mistaken. The fact that plaintiff could work without limitation did mean he could stand or walk without limitation, and if, as plaintiff alleges, defendants discriminated against him because his ability to walk or stand was substantially limited as compared with the general population, even though that impairment had no bearing on his ability to do his job, then defendants have violated the ADA.

Even assuming arguendo that plaintiff was not disabled, his allegations that defendants treated him as such are sufficient for the ADA's purposes. Defendants argue that plaintiff's perceived disability was "transitory and minor," but since his impairment lasted for longer than six months it was not transitory, and, at this stage in the litigation, the Court cannot discredit plaintiff's assertion that it was anything but minor. See 29 C.F.R. § 1630.15(f). Plaintiff has adequately pleaded he was disabled or regarded as such, and defendants' arguments to the contrary are without merit.

### E. Reasonable Accommodation (Count I)

After spending over a hundred paragraphs making allegations of generalized discrimination against plaintiff on grounds of his actual or perceived disability, the Amended Complaint veers dramatically from its narrative and alleges in Count I only that "Defendants have violated the ADA[] by failing to accommodate Plaintiff and/or retaliating against Plaintiff for engaging in protected activity." See Am. Compl. ¶ 133.

To state a claim for failure to reasonably accommodate a disability, a complaint must allege that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006) (internal citation omitted). There are no allegations anywhere in the Amended Complaint that plaintiff required a reasonable accommodation in order to perform his job, let alone asked defendants for such an accommodation. To the contrary, he presented them with

a doctor's note indicating he could return to work without limitation, and noted on his EEOC questionnaire that he did not request any accommodation from them, reasonable or otherwise. <u>See</u> Am. Compl. ¶ 81; Magnotti Aff., Ex. A at 3. Thus, plaintiff has not stated a reasonable accommodation claim. Since the remainder of Count I alleges retaliation, which is duplicative of the claims in Count II, it is dismissed in its entirety.[5]

## F. Retaliation (Count II)

Beyond the disputes addressed <u>supra</u>, defendants do not argue that plaintiff has failed to state a retaliation claim, nor could they. In order to state a claim for retaliation, plaintiff must allege that (1) he engaged in an activity protected by the ADA, (2) his employer was aware of this activity, (3) his employer took adverse employment action against him, and (4) a causal connection between the alleged adverse action and the protected activity (which may be demonstrated as part of a prima facie case simply by temporal proximity between the protected activity and the adverse action). <u>See</u> <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002). Plaintiff claims that he complained to defendants of his reduction in hours following his surgery and was, shortly thereafter, informed that this reduction would be permanent rather than temporary. In other words, he has sufficiently alleged "discriminatorily-motivated diminution of [his] duties" by defendants after speaking out about his situation, and his retaliation claims may proceed. <u>See</u> <u>Preda v. Nissho Iwai Am. Corp.</u>, 128 F.3d 789, 791 (2d Cir. 1997).

## II. State & Common Law Claims

---

[5] As defendants did not raise this specific defect in moving to dismiss the Amended Complaint, dismissal of Count I is without prejudice as against all defendants other than Paolucci and Marzigliano, whose personal involvement plaintiff has not alleged. <u>See</u> <u>Willey v. Kirkpatrick</u>, --- F.3d ---, No. 13-699, 2015 WL 5059377, at *8-9 (2d Cir. Aug. 28, 2015) (citing Fed R. Civ. P. 56(f)). He may move to further amend his pleading if he reasonably believes he may state a failure-to-accommodate claim.

The remaining ten counts of the Amended Complaint focus on state and common law claims.[6]  Defendants have moved to dismiss all of them, and the Court addresses their arguments in turn.

## A.   NYSHRL & NYCHRL (Counts III & IV)

The NYSHRL's protections for disabled workers are generally viewed as co-extensive with the ADA, while the NYCHRL's protections are greater still.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-78 (2d Cir. 2009) (internal citations omitted).  Plaintiff alleges both a discrimination and retaliation claim under the state and local human rights laws.  Since, for the reasons discussed supra, plaintiff has stated a retaliation claim under the ADA, he has also stated one under the NYSHRL and NYCHRL.

To state a discrimination claim under the NYSHRL, as with the ADA, a plaintiff must allege that (1) he was an individual with a disability under the meaning of the statute, (2) his employer had notice of his disability, (3) he could perform the essential functions of the job with or without reasonable accommodation, and (4) he suffered an adverse employment action because of his disability.  See Micari v. Trans World Airlines, Inc., 43 F. Supp. 2d 275, 279 (E.D.N.Y. 1999).  Defendants once again claim that plaintiff was not disabled, but as discussed supra, that argument is meritless.  Since plaintiff has stated a disability discrimination claim under the NYSHRL, it follows logically that he has stated one under the NYCHRL as well.

---

[6] Although the Court has dismissed all federal claims against Paolucci and Marzigliano, it may exercise supplemental jurisdiction over the remaining claims against them because they "derive from a common nucleus of operative fact" with the undismissed federal claim against Crossroads, ProScript, and DeBartolome, making them "part of the same case or controversy."  See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting, inter alia, 28 U.S.C. § 1367(a)).

DeBartolome, Paolucci, and Marzigliano also argue that they cannot be held individually liable under the NYSHRL or NYCHRL. Plaintiff concedes that Marzigliano cannot be held liable, which warrants dismissal of Counts III and IV against him with prejudice, but correctly notes that the state and local statutes allow employees to sue individuals for alleged discrimination if they have "an ownership interest or the power to do more than carry out personnel decisions made by others" at the company where the discrimination occurred. See N.Y. State Div. of Human Rights v. ABS Elecs., Inc., 958 N.Y.S.2d 502, 504 (App. Div. 2013) (citing Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984)). Plaintiff has sufficiently alleged that DeBartolome and Paolucci, as managers of both Crossroads and ProScript, had such power, and their motion to dismiss the state and local human rights law claims against them is therefore denied.

## B. NYLL Whistleblower Claim (Count V)

Section 740(2)(c) of the NYLL prohibits employers from retaliating against any employee who "objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." Defendants allege that plaintiff's claim under the provision is both meritless and an election of remedies that waives the remainder of the claims in the Amended Complaint.

### 1. Merits

Defendants argue that plaintiff had already suffered all the adverse actions he complains of when he objected to their proposal to have no supervising pharmacist working full-time at ProScript, which violated New York State Board of Regents Rule 29.7(a)(10) governing professional conduct. Defendants are incorrect. It is clear from the face of the Amended Complaint that the retaliatory conduct plaintiff complains of

with regard to Count V is not defendants' decision to permanently relegate him to part-time status, but DeBartolome's decision to halt distribution of ProScript's profits after plaintiff complained of the Rule 29.7(a)(10) violation.

The failure to employ a full-time supervising pharmacist, however, does not, on its face, present a "substantial and specific danger to the public health or safety," and the Amended Complaint makes no attempt to argue otherwise. Indeed, the rule requiring that a supervising pharmacist work full-time notes that failure to do so constitutes no more than "unprofessional conduct." Furthermore, there is no allegation in the Amended Complaint of any specific danger the public faced due to ProScript's schedule for its pharmacists. Section 740(2)(c)'s limitations are "consistently and strictly enforced," and since plaintiff alleges no inherent danger or actual adverse consequences from defendants' actions, he has not stated a whistleblower claim under the NYLL. See Frank v. Walgreens Co., No. 09-CV-955, 2011 WL 4465210, at *5-6 (E.D.N.Y. Sept. 26, 2011) (internal citations omitted) (noting that similar alleged violations of pharmacists' rules of professional conduct did not indicate a danger to public health or safety).

## 2. Waiver

Although NYLL § 740(7) indicates that the whistleblower law is not intended to diminish an employee's rights under "any other law or regulation," it goes on to state that commencing an action pursuant to Section 740 "shall be deemed a waiver" of any other rights and remedies available under any other "contract, collective bargaining agreement, law, rule or regulation or under the common law," subject to a limited exception not relevant here. This conflicting language has evoked "a variety of views" from courts that interpret it, and neither New York's Court of Appeals nor the Second

Circuit has clarified the matter.  See Barker v. Peconic Landing at Southold, Inc., 885 F. Supp. 2d 564, 568 (E.D.N.Y. 2012).

Certain state courts have broadly interpreted the waiver clause to require dismissal of any causes of action arising out of the same conduct that underpinned the Section 740 claim, but many federal courts, including this Court, have harmonized it with the broad protective language that precedes it, construing it to waive only other legal rights and remedies that protect against the same wrong that the whistleblower complains of.  See, e.g., id. at 569 (quoting Collette v. St. Luke's Roosevelt Hosp., 132 F. Supp. 2d 256, 267 (S.D.N.Y. 2001)); Reddington v. Staten Island Univ. Hosp., 373 F. Supp. 2d 177, 185-86 (E.D.N.Y. 2005).  Here, of the 11 other counts of the Amended Complaint, only Count XII, which alleges constructive discharge, even mentions the specific wrong Count V seeks to address, i.e., the alleged retaliation for bringing up the rule requiring supervising pharmacists to work full-time.  The remaining 10 counts are discrimination claims and contract disputes, brought pursuant to laws with entirely different protective purposes.  The Court, therefore, will not deem plaintiff's other causes of action, which seek to vindicate rights "completely separate from those sought to be protected by Section 740," waived.  See Barker, 885 F. Supp. 2d at 569.

## C.  Breach of Contract (Count VI)

Defendants' argument against the breach-of-contract claim in the Amended Complaint is premised on their NYLL waiver argument, and is meritless for the reasons discussed supra.  Nevertheless, the Amended Complaint makes no reference to any actions by Paolucci or Marzigliano that constituted a breach of an express agreement they signed with plaintiff, and Count VI is dismissed as against them.  Because the

18

Amended Complaint sufficiently alleges that DeBartolome is the alter ego of Crossroads, however, plaintiff may continue to assert Count VI against him.

### D. Quasi-Contract Claims (Counts VII, VIII, IX, & X)

Counts VII (breach of implied covenant of good faith and fair dealing), VIII (breach of implied contract), IX (quantum meruit) and X (unjust enrichment) of the Amended Complaint all seek equitable relief, but such relief is appropriate only in the absence of an express agreement. Plaintiff correctly notes that such claims may be alleged in the alternative to a breach-of-contract claim if the parties dispute whether a contract's provisions cover the subject matter in question, but no such dispute exists here. Plaintiff alleges there is ambiguity in the ProScript Operating Agreement's provisions for profit-sharing after the departure of a member from regular employment at ProScript, not any doubt as to whether the Operating Agreement established and governed that profit-sharing system. This is an issue of contractual interpretation, and since Counts VII through X seek "non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter," they are dismissed. See R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997).

### E. Fraudulent Inducement (Count XI)

Since Count XI of the Amended Complaint alleges that DeBartolome intentionally committed fraud when he asked plaintiff to sign the Operating Agreement, it is subject to the heightened pleading standards that Federal Rule of Civil Procedure 9(b) imposes on fraud claims.[7] While that Rule permits intent to be averred generally,

---

[7] Defendants' motion focuses on N.Y. C.P.L.R. 3016(b), which also imposes a specificity requirement on allegations of fraud made pursuant to New York law, but since Count XI does not even satisfy the arguably less stringent requirements of Rule 9(b) regarding intent, the Court need not address its viability under state law. See Soper v. Simmons Int'l, Ltd., 632 F. Supp. 244, 249 & n.8 (S.D.N.Y. 1986); DaPuzzo v. Reznick Fedder & Silverman, 788 N.Y.S.2d 69, 70-71 (App. Div. 2005).

"plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent."  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (quoting Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)).  A strong inference of fraudulent intent may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  The Amended Complaint alleges no such facts.  Plaintiff signed the Operating Agreement in 2006 and received his share of ProScript's profits without incident for years.  Only after plaintiff's surgery did defendants' behavior towards him purportedly change, demonstrating neither motive nor opportunity to commit fraud in 2006, nor even circumstantial evidence suggesting misbehavior or recklessness on defendants' parts at that time.  Count XI is dismissed accordingly.

## F.  Constructive Discharge (Count XII)

Constructive discharge occurs when an employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.  Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (citing Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996)).  Plaintiff alleges that being forced to work in a situation where defendants were violating the Board of Regents' rules regarding full-time supervising pharmacists forced him to leave ProScript.  See Am. Compl. ¶¶ 208-10.  Yet plaintiff's own letter of resignation makes no reference to this issue, citing only the phone call during which DeBartolome informed plaintiff he could not return to work

full-time for the foreseeable future.  See id., Ex. 3.  Since his resignation was not based on the alleged violation of the rules of professional conduct for pharmacists, and this violation was ongoing well before his resignation, it follows logically that the failure to comply with the Board of Regents' rules did not create an intolerable working environment for him.  Count XII is therefore dismissed.

## III.  John Doe & XYZ Corporation Defendants

Several unknown John Doe and XYZ Corporation defendants are named in the Amended Complaint's caption, but not featured anywhere in its factual recitations beyond two boilerplate paragraphs indicating that they somehow "have liability for the claims set forth herein."  See Am. Compl. ¶¶ 15-16.  Since there is no indication whatsoever that these unknown individuals and/or corporations participated in the activities described in the Amended Complaint, the claims against them are dismissed.  If specific additional parties and their roles in the wrongs plaintiff alleges are identified over the course of discovery, plaintiff may, of course, move to amend his complaint.

## IV.  Leave to Amend

Finally, plaintiff argues that, should any of his claims be dismissed, he should be given leave to amend his complaint again.  Although leave to amend should be "freely given," a court may deny it "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Plaintiff has already amended his complaint once in the face of defendants' earlier motion to dismiss, which raised substantially the same issues as the present motion, and he has not indicated either in the Amended Complaint or his opposition how a Second Amended Complaint would cure the defects described supra.  Leave to replead the claims

dismissed in this Memorandum and Order is therefore denied, with the exception of Count I (ADA failure to accommodate) as against Crossroads, ProScript, and DeBartolome. See In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend where plaintiffs were previously "provided notice of defects in the[ir] . . . Complaint by the defendants and given the chance to amend [it]. . .")

Since it is clear from the Amended Complaint and the motion papers that plaintiff was attempting to bring a discrimination claim under the ADA rather than a failure-to-accommodate claim, however, leave to amend is granted for the limited purpose of properly pleading such a claim against Crossroads, ProScript, and DeBartolome.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED to the following extent:

- Count I (ADA failure to accommodate) is dismissed with prejudice as against Paolucci and Marzigliano, and without prejudice as against all remaining defendants.
- Counts V (NYLL whistleblowing), VII (breach of implied covenant of good faith and fair dealing), VIII (breach of implied contract), IX (quantum meruit), X (unjust enrichment), XI (fraudulent inducement), and XII (constructive discharge) are dismissed with prejudice as against all defendants.
- Counts II (ADA retaliation) and VI (breach of contract) are dismissed with prejudice as against Paolucci and Marzigliano.

- Counts III (NYSHRL and NYCHRL discrimination) and IV (NYSHRL and NYCHRL retaliation) are dismissed with prejudice as against Marzigliano, and he is therefore dismissed from this action.

- All remaining counts are dismissed without prejudice as against the John Doe and XYZ Corporation defendants, and they are therefore dismissed from the action.

In all other respects, defendants' motion is DENIED. Plaintiff is granted leave to file a Second Amended Complaint solely to add a claim of disability discrimination under the ADA and remove those defendants and claims that have been dismissed from this action no later than 14 days from the date of this decision.

SO ORDERED.

Dated:    Brooklyn, New York
          September 3, 2015

_____/s/_____
I. Leo Glasser
Senior United States District Judge