UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARY MAGNOTTI,

               Plaintiff,

      -against-

CROSSROADS HEALTHCARE
MANAGEMENT, LLC, PROSCRIPT
PHARMACY MANAGEMENT, LLC,
MICHAEL DEBARTOLOME, in his official
and individual capacities, and PATRICK
PAOLUCCI, in his official and individual
capacities,

               Defendants.
--------------------------------------------------------x

                                              MEMORANDUM & ORDER
                                              14-cv-6679 (ILG) (RML)

GLASSER, Senior United States District Judge:

      On April 29, 2021, counsel for Plaintiff Mary Magnotti ("Mrs. Magnotti") and counsel for

Defendants Crossroads Healthcare Management, LLC ("Crossroads"), ProScript Pharmacy

Management, LLC ("ProScript" or the "Company"), Michael DeBartolome ("DeBartolome") and

Patrick Paolucci ("Paolucci") held a telephonic conference with the Court to discuss the parties'

pending motions for summary judgment. In an order issued shortly after the conference, the Court

denied the motions for summary judgment. Dkt. 68. As regards the breach of contract dispute,

the parties agreed to submit the documents they contend constituted the contract, the terms and

duration of which were to be construed by the Court. *Id.* Among those documents was a ProScript

Operating Agreement dated November 2004, the parties and signatories to which were

DeBartolome and Paolucci. Pl. Mem. Ex. 2, Dkt. 71; Def. Mem. Ex. A, Dkt. 73-1. Louis Magnotti

("Magnotti") was not a party to that agreement nor was he mentioned or referred to at all. The

Court is unaware of any principle of law by which an agreement would confer a benefit or impose

1

an obligation upon a person who is not a party to it or a third party beneficiary and holds that November 2004 agreement to have no bearing upon the resolution of the issues before the Court.

Magnotti was first employed by the Defendants Crossroads and ProScript, a limited liability company, in November 2004 as a Supervising Pharmacist at an annual salary of $104,000. Third Am. Compl. ("TAC") ¶ 15, Dkt. 49. Sometime in 2005, he began working full time for ProScript. TAC ¶ 16. In 2006, Magnotti accepted an invitation to become a member of ProScript and on December 15, 2006, an Operating Agreement of ProScript Pharmacy Management, LLC ("2006 OA") was entered into by DeBartolome on behalf of Crossroads, Barry Marzigliano ("Marzigliano"), and Magnotti. Pl. Mem. Ex. 1, Dkt. 71; Def. Mem. Ex. B, Dkt. 73-2. It is that agreement the terms and duration of which the parties agreed was for the Court to construe.

## DISCUSSION

The initial managers of the Company were DeBartolome and Paolucci and the management of the business and affairs of the Company was vested in them. 2006 OA §§ 2.1-2.3. The managers are classified as Class A and Class B, § 2.4, with 13 sections, §§ 2.5-2.17, providing for, among other things, their meetings, committees, removal, and election which appear to be verbatim from a form book and haven't the remotest relevance to the discrete issues in this case, which are the terms and duration of Magnotti's interest in the Company.

Those issues are determined by a critical reading of Article 3 of the 2006 OA, headed "MEMBERS." Inexplicably but immaterially inconsistent with § 2.4, the classes of members established in § 3.1 include "(a) Class I: (i) consist[ing] of the following Members: Crossroads Health Care Management, LLC." Crossroads was the Managing Member of ProScript whose initial members were DeBartolome and Paolucci, as in §§ 2.1-2.4 *supra*. Class I members have 100 votes. 2006 OA § 3.1(a)(ii). The Class II members are Marzigliano and Magnotti and have

2

zero votes. *Id.* § 3.1(b)(i)-(ii). Of significant bearing on this case is § 3.6 which provides as follows: "A Class II Member may not assign, bequeath, devise or otherwise transfer the Class II Member's interest in the Company. Unless otherwise provided elsewhere in this Agreement." It was not otherwise provided. In an affidavit signed on June 5, 2015, nearly nine years after signing the 2006 OA, Mr. Magnotti acknowledged that he "did not have any equity in Proscript and/or Crossroads" and therefore had nothing of value in that company he could transfer by assignment or otherwise. Aff. of Louis Magnotti ("Magnotti Affidavit") ¶ 8, Dkt. 73-6. The Plaintiff's claim of entitlement to a continuation of distributions from the Company even after her husband died is clearly meritless.

The remaining issues, the Court finds, are determined by the terms of the 2006 OA to which Mr. Magnotti was a party. The Court also finds that the 2006 OA did nothing more than give Magnotti a profit sharing interest in the Company. His Class II membership in the Company and his status as an employee were indistinguishable, and interdependent. That is to say his position as a Supervising Pharmacist and as a Class II member of the Company were co-existent. That finding is compelled by the Magnotti Affidavit, in which he stated that: "Defendants controlled all aspects of my employment throughout the entire period of my employment with Proscript and Crossroads. This did not change before or after I entered into an Operating Agreement on or around December 15, 2006 and also became a Class II Member," ¶ 4; "As a Supervising Pharmacist for Proscript and Crossroads, and as a Class II Member, I was unable to wield much - if at all any - influence over Proscript or Crossroads, before or after the Operating Agreement," ¶ 6; "As a Supervising Pharmacist for Proscript and Crossroads and a Class II Member, I did not share in the liabilities of Proscript and/or Crossroads" and "I did not have any equity in" them, ¶¶ 7-8; "I was hired by Defendants as a Supervising Pharmacist and continued to work in this capacity even after

3

I entered into the Operating Agreement. Defendants never hired me as an owner," ¶ 9.  And in paragraph 10, Magnotti stated that the Managing Members had "complete control and dominion over all decisions made within the organization(s), including all personnel decisions."  In his Complaint, Magnotti acknowledges that DeBartolome told him he would be entitled to profit sharing of 15% and "would share in the company's growth *in lieu of raises and/or bonuses*."  TAC ¶¶ 49, 51 (emphasis added).

Crucial to the construction of the 2006 OA and the resolution of the parties' dispute is a letter addressed to DeBartolome and Paolucci, the Class I members and managers of the Company, dated February 4, 2014, that reads in relevant part as follows:

> Crossroads Healthcare Management
> 2556 Arthur Kill Road
> Staten Island, NY 10309
>
> Dear Mike and Pat,
>
> After being informed in an insulting and degrading conference call that I cannot return to my full time position as supervising pharmacist for ProScript Pharmacy in the foreseeable future, I feel no other recourse than to leave my position.  I have given 9+ years to helping this company run successfully and efficiently and now feel I am not needed nor wanted.  I will terminate my employment as supervising pharmacist effective February 18, 2014.  I will still remain a member of the LLC and will assist in that capacity as it is necessary.
>
> Sincerely,
>
> Louis Magnotti
> Supervising Pharmacist, ProScript Pharmacy LLC

Dkt. 49-1.  Magnotti's reservation of Class II membership in the Company can only be explained as a patent attempt to claim a continuing 15% share in the profits of the Company.  As was revealed in detail above, his Class II membership had no substantive meaning apart from his employment as a Supervising Pharmacist and his resignation of that position carried his Company membership

with it.  His willingness to remain to assist the Company as a Class II member was magnanimously

hollow.

The section of the 2006 OA relevant to the resolution of the issue is "Distribution Before

Member's Withdrawal," § 3.12:

> Before a Member's withdrawal and before the winding up of the Company, a Member is entitled to receive distributions from the Company from the net profits of Company as follows:
>
> Crossroads Health Care Management, LLC – 70%
> Barry Marzigliano – 15 %
> Louis Magnotti – 15%
>
> The term 'net profits' means income or gain of any kind received or deemed to be received by the Company according to generally accepted accounting procedures.  The company may not make any distribution that will impair the ability of the Company to pay its debts and obligations as they mature.

This section is unambiguous and requires no explanation.  While in his employ as a Supervising

Pharmacist, Magnotti was entitled to receive 15% of the "net profits" as defined by this section.

Upon the resignation from the Company, sections 3.11 and 3.14 of the 2006 OA became

applicable.  In essence, § 3.11 provides that upon Magnotti's disassociation (which the Court

construes to be synonymous with resignation) from the Company, 15% of the Limited Liability

Company's Interest was to be distributed to him.  "Limited Liability Company Interest" is defined

to mean "the fair market value of the Company's net assets determined as of the effective date" of

the member's resignation which, in this case, was February 18, 2014.

Similarly applicable is "Distribution on Dissociation," § 3.14, which reads as follows:

"Within a reasonable time after dissociation, a Member (or the Member's heirs or devisees upon

the death of the Member) [is] entitled to receive the fair market value of his . . . Limited Liability

Company Interest as of the date of Dissociation."  Relevant, too, is § 3.15, which provides that

upon dissociation, "the Company may not make a distribution in a form other than cash."

5

In sum, while Magnotti was employed by the company he was entitled to receive 15% of the "net profits" of the Company as that term is there defined.   Upon the effective date of his resignation, February 18, 2014, he (or his heirs or devisees) was entitled to receive the fair market value of his 15% interest in the Company at that time.

SO ORDERED.

Dated: Brooklyn, New York
September 1, 2021

_____/s/_____
I. Leo Glasser                              U.S.D.J.